IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **FELIX HASSON** | ) |
| | ) |
| *Plaintiff,* | ) Case No. 4:25-cv-2621 |
| | ) |
| v. | ) Jury Trial Demand |
| | ) |
| **JAYLEN DAVIS** | ) |
| | ) |
| and | ) |
| | ) |
| **RYAN CROCKETT** | ) |
| | ) |
| *Defendant.* | ) |

## COMPLAINT

Plaintiff Felix Hasson (hereinafter "Plaintiff") by and through his undersigned counsel, hereby files this Complaint against Defendants Jaylen Davis and Ryan Crockett for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 to recover monetary damages, attorney's fees, costs and obtain injunctive and declaratory relief.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under, inter alia, 42 U.S.C. § 2000a and 42 U.S.C. § 1981, laws of the United States, and all other claims are part of the same case or controversy pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants have

1

conducted business in this judicial district and may be found conducting business in this judicial district.

## PARTIES

3. Plaintiff Felix Hasson is a natural person currently residing at 6310 Main Street, Houston, TX 77005. He is a professional videogamer whose game of choice is Super Smash Brothers Ultimate ("Smash").

4. Defendant Jaylen Davis is a natural person regularly conducting business at the Legends Event Center at 2533 Midtown Pk Blvd, Bryan, TX 77801. Davis is a Smash tournament organizer for a group called "CStat Smash" and banned Plaintiff from their tournaments.

5. Defendant Ryan Crockett is a natural person regularly conducting business at the Legends Event Center at 2533 Midtown Pk Blvd, Bryan, TX 77801. Crockett is a Smash tournament organizer for CStat Smash and banned Plaintiff from their tournaments.

## FACTS

**Plaintiff's Gaming History and Success**

6. Plaintiff Felix Hasson is an American competitive video gamer specializing in Super Smash Brothers Ultimate ("Smash").

7. Smash is a platform-based fighting game made by Nintendo in which players use iconic video game characters to fight each other and try to knock their opponents off of the screen. There are eighty-nine characters available to choose from, each with their own unique abilities and tools that players can use to outplay their opponents.

8. Plaintiff began competitive gaming in or around 2014, playing online tournaments in or around 2020, and in-person tournaments in or around 2021. By or around 2022, he was ranked

#3 in Israel, where he resided during a gap year from his education, and he was highly competitive for the #1 spot.

9. Following Plaintiff's gap year, he returned to the United States and competed in local, regional, and national tournaments in New York, Texas, Florida, and recently California. By or around 2023, Plaintiff was ranked #1 at Rice University, and was the 19th best player in the world among players who play as Terry, one of the characters players can select.

10. In or around 2024, Plaintiff was invited by Nintendo as one of six players to compete in the Smash Brothers Ultimate Championship 2024 in San Francisco after placing first in the Southwest North American Qualifier.

11. Over the course of his career, Plaintiff has won prize money, gaming equipment, trophies, and additional items. He estimates the total value of his winnings at around $7,000.

**Plaintiff's Outspoken Support for and Affinity to His Ancestral Homeland of Israel and His Opposition to Those Who Seek its Destruction**

12. Plaintiff is a Jewish-American who feels and publicly expresses a deep affinity for Israel, his family's ancestral homeland. While Plaintiff and his family have lived outside of Israel for countless generations, Plaintiff identifies Israel as his ultimate place of national origin. His racial and religious identities as a Jew are also intimately connected to Israel.

13. Plaintiff's connection to Israel is neither idiosyncratic nor can it be chalked up to mere politics; it is at the core of what makes Plaintiff (and millions of others) Jewish. The Bible itself references this ancient Jewish hope[1] while the Prophets and Writings of the Hebrew Bible repeatedly record this aspiration.[2] From a Jewish law perspective, over half of the Biblical commandments that religious Jewish people are bound to obey are specifically tied to the Jewish

---

[1] *See e.g., Deuteronomy* 30:1-5
[2] *See e.g., Isaiah* 11:11-12; *Jeremiah* 29:14; 20:41-42; *Psalm* 126; *Psalm* 137.

homeland.³ From a doctrinal point of view, belief in and hope for the return to Zion is literally part of the 13 Principles of Jewish Faith.⁴

14. Indeed, the Jewish religion is predicated on the belief that God promised Abraham that he and his descendants shall live in and maintain sovereignty over the Land of Israel,⁵ and much of the narrative portions of the Torah and greater Jewish Bible detail the tribulations Jews experience when they do not have sovereignty over this land and their resulting struggle to achieve and maintain such sovereignty. Even from a purely secular perspective, this connection to Israel is a core feature of the cultural identity of those of Jewish national origin and race like Plaintiff. Jewish identity is multifaceted, including aspects of race, religion, national origin, ethnicity, and culture, and Jews receive protection from discrimination under a number of civil rights acts, including Section 1981. *See, e.g., Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987) ("Jews and Arabs were among the peoples then considered [when these civil rights statutes were passed] to be distinct races and hence within the protection of the [civil rights] statute[s]."). Whether one views Plaintiff's Judaism through the prism of religion, race, or national origin, Jewish sovereignty and self-determination in Israel is core to all three identities.

15. In pursuit of his ancestral, racial, and religious connection to Israel, Plaintiff first visited Israel in or around 2015 and thereafter spent a gap-year there from approximately August 2021 to June 2022, where he studied Jewish scripture and participated in technology internships.

16. On or about September 13, 2021, Plaintiff posted on X, then Twitter, "in the west bank bumpin carti . . . i got to introduce these settlements to off the grid" ("*Donda* Tweet"). Below this tweet, he posted a photograph of the Greek god Prometheus giving man fire. At the time,

---

³ *About Us,* TORAH VEHA'ARETZ INSTITUTE, https://en.toraland.org.il/about/.
⁴ *Maimonides Introduction to Perek Helek,* MAIMONIDES HERITAGE CENTER, https://www.mhcny.org/qt/1005.pdf. (explaining the 12th Fundamental Principle).
⁵ Genesis 12:1-9.

Plaintiff was on a hike in Judea and Samaria—sometimes called the "West Bank" — at Wadi Gelt. Listening to the just released *Donda* music album, Plaintiff joked that he was like Prometheus by introducing a paradigm-shifting album to the backwoods of Israel. Plaintiff's tweet served as a celebration and affirmation of his connection to his ancestral homeland and the time he was spending there. In fact, the region he hiked, Judea, is of the root word for the term "Jew."[6]

17. On or about, July 27, 2022, the Israel Defense Forces ("IDF") participated in a popular meme trend by featuring characters from the "Mr. Man" and "Little Miss" children's book series in a post on its official Twitter account.[7] Plaintiff responded to a retweet of this meme with his own, showing an image of a man with an exaggerated square jaw, known in meme culture as a "Chad," which is intended to symbolize confidence and strength, backdropped against an Israeli flag ("Chad Tweet"). Plaintiff wrote "based idf." Plaintiff's tweet served a celebration and affirmation of his connection to his ancestral homeland of Israel, the time he spent there, and those who defend it from anti-Semitic aggression.

18. The concept of a Jewish warrior class and national defense of the Land of Israel are as integral to Plaintiff's Jewish religion, race, and national origin as the land of Israel is itself. Indeed, from a biblical perspective, the first Jewish army is described a mere two chapters after the Torah details God's promise of Israel to Abraham.[8]

---

[6] *See* Encyclopedia Britannica, *Jew,* (last checked Nov. 28, 2024), https://www.britannica.com/topic/Jew-people ("The term Jew is thus derived through the Latin Judaeus and the Greek Ioudaios from the Hebrew Yĕhūdhī. The latter term is an adjective occurring only in the later parts of the Hebrew Bible and signifying a descendant of Yehudhah (Judah), the fourth son of Jacob, whose tribe, together with that of his half brother Benjamin, constituted the Kingdom of Judah.").

[7] *See* https://x.com/brndxix/status/1552174831201812480 (Jul. 27, 2022).

[8] Genesis 14:14 ("And Abram heard that his kinsman had been taken captive, and he armed his trained men, those born in his house, three hundred and eighteen, and he pursued [them] until Dan.").

19. On or around January 19, 2023, an X user tweeted a graph of the most popular Smash characters in every country, including "Palestine," a proposed state including Gaza and parts of the West Bank, even though there are no tournaments held in Gaza or the West Bank. Plaintiff retweeted this post and wrote "gaza has a smash scene?" Another user replied to Plaintiff that Palestinians are probably not good at the game, and Plaintiff responded "palestine so free." Plaintiff also noted that it would be ironic if the character most frequently used by Palestinians used bombs as their weapon of choice ("Rocket Tweets"), an allusion to the fact that Hamas, the popularly supported governing regime in Gaza, had fired thousands of bombs at Israeli civilians since gaining control of Gaza in 2007 and previously employed suicide bombings against Israeli civilians, all with the popular support of the Palestinian people.

20. On or about October 7, 2023, in response to Hamas's invasion of, and its massacre of over 1,200 people in Israel, Plaintiff tweeted "gaza got something big coming their way for sure" ("October 7 tweet"). Plaintiff offered this commentary as an obvious and predictive geopolitical observation.

21. On or about December 20, 2023, Plaintiff replied "LMAOOOO," a slang expression used on social media platforms to denote laughter, to a screenshot of X-user @Selwan_i's celebratory tweet on October 7, juxtaposed against her December 16, 2023 tweet noting that she lost everything ("LMAO tweet"). Plaintiff wrote his response in support of the people in his ancestral homeland and in opposition to those who celebrate terrorism committed against them.

22. As a result of Plaintiff's above detailed Judaism and Zionism, and his related public celebration and support of his Jewish race, religion, and national origin, Plaintiff was banned

from a number of Smash tournaments and other places of public accommodation. These venues, however, continue to admit individuals espousing well-established anti-Semitic views.[9]

**Plaintiff's Ban from CStat Smash Events**

23. On January 18, 2024, and due to Plaintiff's pro-Israel tweets and interlinked Jewish identity, Defendants deregistered Plaintiff from Battle For Bryan 4, a regional CStat Smash tournament at Legends Event Center in College Station, Texas held on January 20. Defendant Davis told Plaintiff "in the climate of how shit is right now, I think it would be a really bad look for me if I let you attend our event." Curiously, and as described below in more detail, Defendant Davis did not believe it would be a "bad look" to permit the attendance of non-Jews engaged in public racism in the form of antisemitism. It was only a "bad look" to have Plaintiff, a Jew, attend who merely stood up for Israel as his racial, religious, and national origin imperatives dictate.

24. On September 6, 2024 Plaintiff communicated on Discord with Defendant Crockett (Discord handle "Graggy"), who accused Plaintiff of making people feel unsafe, a comment

---

[9] Antisemitism is defined in detail by The International Holocaust Remembrance Alliance ("IHRA"), a multi-governmental organization with 35 member countries, including the United States, with a mission "to strengthen, advance and promote Holocaust education, remembrance, and research worldwide." *See* International Holocaust Remembrance Alliance, *About The International Holocaust Remembrance Alliance* (last visited Nov. 19, 2024), https://holocaustremembrance.com/who-we-are. Recognized as a "vital tool in the struggle against antisemitism" by the New York Governor's office (*See* Proclamation of Governor Kathy Hochul (Jun. 12, 2022), https://www.governor.ny.gov/sites/default/files/2022-06/IHRA_Antisemitism_Definition_Proclamation-2022.pdf), IHRA defines antisemitism as encompassing, inter alia, "making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as collective — such as, especially but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions ("Jews Control the World Trope"); accusing Jews as a people of being responsible for real or imagined wrongdoing committed by a single Jewish person or group, or even for acts committed by non-Jews ("Collective Responsibility Trope"); denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor ("Jewish Self-Determination Denial"); using the symbols and images associated with classic antisemitism (e.g., claims of Jews killing Jesus or blood libel) to characterize Israel or Israelis ("Blood Libel Trope"); and drawing comparisons of contemporary Israeli policy to that of the Nazis ("Holocaust Inversion")." International Holocaust Remembrance Alliance, *Working Definition of Antisemitism* (last visited Nov. 19, 2024), https://holocaustremembrance.com/resources/working-definition-antisemitism (cleaned up). As of August 2024, 35 States and the District of Columbia have adopted IHRA, including Texas. American Jewish Committee, *Use of the Working Definition in the U.S.* (last visited Nov. 19, 2024), https://www.ajc.org/use-of-the-working-definition-in-the-us.

made in reference to Plaintiff's expressions of his racial, religious, and national origin identities on X. On February 27, however, Plaintiff communicated with an event organizer (Discord handle @Wilyrob), who conceded that Plaintiff would not engage in any unsafe behavior.

25. Plaintiff attempted to register for Battle for Bryan 5, held at the Legends Event Center on August 5, 2024, but was deregistered on September 7.

26. On April 15, 2025, Plaintiff registered for Battle for Bryan 6, to be held at the Legends Event center on April 19, but Defendant Davis banned Plaintiff on the same day he registered and removed him from their Discord server after Plaintiff advised participants of related litigation in New York that similarly seeks to vindicate his civil rights, including against those who solicit discriminatory bans against him.

27. On April 16, 2025, Defendant Crockett messaged Plaintiff to reiterate, reaffirm, and make permanent Defendants' longstanding ban on Plaintiff on grounds of his tweets, which Crockett disingenuously asserted "endorse violence," and Plaintiff's stern online warning to tournament participants that he is willing to litigate to vindicate his civil rights.

28. Defendants have never banned non-Jewish tournament participant Ben Calva Flores (X handle @FizzleTheHizzle) despite his public antisemitism in the form of Holocaust Inversion: accusing Israel of genocide and Plaintiff of supporting said "genocide" in an August 22, 2024 tweet.[10] Calva Flores has participated in at least two post-October 7 Battle for Bryan tournaments.[11]

29. Similarly, Defendants have never banned non-Jewish participant Parker Hearn despite his history of antisemitism in the form of Holocaust Inversion by retweeting false accusations that Israel is committing genocide,[12] "systematically wiping a city of two million people off the face

---

[10] *See* https://x.com/FizzleTheHizzle/status/1826805854332473513.
[11] *See* https://smashdata.gg/smash/5/player/Fizzle?id=1466407
[12] *See* https://x.com/MustafaAli_X/status/1819090029266063704 (Aug. 1, 2024);

of the earth block by block",[13] and running "torture camps."[14] Hearn has also expressed general animus towards Israel by retweeting a cartoon of an Israeli soldier washing blood off his hands with a fountain painted like the American flag.[15] Hearn has also engaged in Jewish Self-Determination Denial by retweeting someone calling the Israel Defense Forces, the military of the international recognized State of Israel, as the "Israeli Occupation Army,"[16] a suggestion that Israel's presence in the Jewish homeland is illegitimate and functions merely as a belligerent occupation. Hearn has participated in at least two post-October 7 Battle for Bryan tournaments.[17]

### COUNT I
Violation of Title II of the Civil Rights Act of 1964
42 U.S.C. § 2000a

30. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

31. 42 U.S.C. § 2000a(a) reads: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

32. 42 U.S.C. § 2000a-2 reads in relevant part: "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title, or . . . (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a-1 of this title."

33. For purposes relevant here, places of public accommodation are statutorily defined as a "place of exhibition or entertainment." 42 U.S.C. § 2000a(3).

---

[13] *See* https://x.com/tksshawa/status/1817029552822190569 (Jul. 26, 2024).
[14] *See* https://x.com/QudsNen/status/1788910055238037741 (May 10, 2024).
[15] *See* https://x.com/blocbeacon/status/1777799711639933302 (Apr. 9, 2024).
[16] *See* https://x.com/SaeedDiCaprio/status/1756851570510037255 (Feb. 11, 2024).
[17] *See* https://smashdata.gg/smash/5/player/Fizzle?id=1466407

34. Plaintiff's Jewish race, religion, and national origin are inseparably connected to the land of Israel, its people, its sovereignty, and its use of military actions to defend itself. Due to this connection and affinity, Defendants denied Plaintiff the right to the full and equal enjoyment of the Legend Event Center, a place of exhibition or entertainment as video game tournaments are held there. Defendants otherwise withheld or denied a right to Plaintiff guaranteed by section 2000a. Finally, in light of the fact that Defendants reaffirmed the ban on Plaintiff and removed him from their group chat almost immediately after Plaintiff noted his willingness to vindicate his civil rights through litigation, Defendants punished Plaintiff for exercising or attempting to exercise his rights or privileges secured by section 2000a.

35. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

36. For this Count, Plaintiff seeks declaratory and injunctive relief, requesting that the Court declare that the bans imposed by Defendants was unlawful and order the ban to be lifted.

## COUNT II
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1981

37. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

38. 42 U.S.C. § 1981(a) reads: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

39. 42 U.S.C. § 1981(b) reads: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

40. The statute under which this cause arises "was designed to do just what its terms suggest: to prohibit all racial discrimination . . . with respect to the rights enumerated therein." *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1976).

41. Plaintiff is a racially Jewish person within the jurisdiction of the United States who, because of his Jewish race, was unlawfully denied the same right to contract as white citizens when Defendants banned him from their tournaments.

42. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A. That the Court order Defendants to pay compensatory damages;

B. That the Court order Defendants to pay punitive damages;

C. That the Court enter judgment in favor of Plaintiff including injunctive relief requiring Defendants to permit Plaintiff to play at the Smash tournaments he organizes, including but not limited to those held at the Legends Event Center;

D. That the Court order Defendants to pay Plaintiff's reasonable attorney's fees, expert fees, and costs; and

E. That the Court order Defendants to pay pre-judgment and post-judgment interest as provided by law.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against Defendants.

Date: June 5, 2025                                     Respectfully submitted,


                                                    National Jewish Advocacy Center, Inc.


                                                    __/s/_____*Matthew Mainen*__
                                                    Matthew Mainen
                                                    Bar No. MD0200
                                                    National Jewish Advocacy Center
                                                    666 Harless Place
                                                    West Hempstead, NY 11552*
                                                    Phone:  (301) 814-9007
                                                    Email: matt@njaclaw.org
                                                    *Attorney does not practice in New York; mail will be forwarded to him.